NANCY M. KEELE, Appellant, v. ISSAC T. KEELE, Respondent.   `

St. Louis Court of Appeals, April 24, 1906.

1. **ADMINISTRATION:** Vacating Allowance.   Section · 214, Revised Statutes 1899, permitting any executor, administrator, heir or creditor of an estate, within four months after the allowance of a demand, to file an affidavit and on proper showing procure a vacation of the allowance, does not permit a motion to vacate by one interested in the estate who has appeared and contested the demand at the time of its allowance.

2. ——: ——: **Denying Right to Appear.**   Where on the hearing of a demand against an estate which was not contested by the administrator, an heir appeared for the purpose of defending, but was denied the right to make a defense by the court, he was not concluded by the judgment of allowance and had a right to move within four months thereafter for its vacation, under section 214, Revised Statutes 1899.

3. ——: ——: **Satisfactory Proof.**   In order to vacate an allowance under section 214 so as to hear the demand anew, the "satisfactory proof" to be offered need not be such as would be required to defeat the claim at a hearing on the merits, but only such a probable showing against the propriety of the allowance as to convince the court that it ought to be reheard.

4. ——: ——: **Allowance by Circuit Court.**   Although an allowance of a demand against the estate of a deceased was made by the circuit court after having been certified there under section 1760, Revised Statutes of 1899, on account of the disqualification of the probate judge, an heir of the estate could move for the vacation of the allowance, under section 214.

Appeal from Montgomery Circuit Court.—*Hon. John M. Barker*, Special Judge.

AFFIRMED AND REMANDED.

*W. B. M. Cook* and *W. C. Hughes* for appellant.

(1)   Since section 214, Revised Statutes 1899, was amended in 1899 an heir or creditor must show that the

allowance sought to be set aside, was improperly obtained. There is not a syllable of evidence here that this allowance was improperly obtained but only that the administrator, after investigation, made no defense but did require claimant to prove her demand to the court, as appears by the circuit court records. (2) The personal estate of a decedent must pass through administration before the heirs are entitled to their distributive shares, prior to which time an administrator must represent them. Both at law and in equity the whole personal estate of the deceased, vests in the executor or administrator. Green v. Tittman, 124 Mo. 376, 27 S. W. 391; Leakey v. Scott, 10 Mo. 368; Beacroft v. Lewis, 41 Mo. App. 546; State ex rel. v. Moore, 18 Mo. App. 406; 1 Williams on Executors, 717, 718; Perkins v. Goddin, 111 Mo. App. 429, 85 S. W. 936; Smith v. Denny, 37 Mo. 20. There is no authority for the trial judge to make Issac Keele, one of the heirs, and intervening defendant, but he can only, on proper showing, set aside the allowance, and certify the cause back to the probate court for trial anew. R. S. 1899, sec. 214.

*James F. Ball* and *E. Rosenberger & Son* for respondent.

From an order setting aside an allowance against an estate, under section 214, Revised Statutes 1899, no final judgment being rendered thereon, an appeal will not lie. Kidder v. Wright, 72 Mo. App. 378; Crossland v. Admire, 118 Mo. 87, 24 S. W. 154; Schwoerer v. Christopel, 64 Mo. App. 81; Harrison v. Scott, 72 Mo. App. 658; Hirsh v. Weisberger, 44 Mo. App. 506; Halsey v. Meinrath, 54 Mo. App. 335. The court under section 214, Revised Statutes 1899, properly set the allowance aside. Martin v. LaMaster, 63 Mo. App. 342; Mason v. Gaither, 106 Mo. App. 354, 80 S. W. 277.

·STATEMENT.—On December 24, 1882, John T. Keele died intestate in Montgomery county, Missouri, leaving surviving him his mother, Nancy M. Keele, who is the present appellant, his brother, Isaac T. Keele, the respondent, other brothers and some sisters. The deceased possessed considerable land and personal property. Letters of administration were not granted on his estate for aught that is shown, until the spring of 1894, when S. T. Weeks was appointed administrator. At the July term of the probate court of said county the following instrument was presented for allowance against the estate:

"I promise to pay to my dear mother Nancy M. Keele, the just and full sum of one thousand dollars for value received without defalcation or discount to bear interest from date at the rate of six per cent per annum. This note is executed for and in consideration of kind and motherly care and treatment during my long and protracted sickness. The above note is to be paid out of the proceeds of my property real and personal after my death.

"This 4th day of October, 1882.

"JOHN KEELE.

"Witnesses:   J. P. Bailey,
          "Rufus W. Hunley."

The judge of the probate court was disqualified to sit in the case and certified the proceeding to the circuit court of Montgomery county. When the demand came on for hearing in the latter court, Isaac T. Keele appeared in person and by his attorney and asked leave to contest the allowance in behalf of himself as brother and heir of the deceased. The attorney for Nancy Keele, the claimant, objected to Isaac Keele appearing as a contestant at the hearing, on the ground that he was not a party to the action and that the proper party to resist the demand was S. T. Weeks, administrator of the estate. The court refused to permit respondent to defend. The

administrator of the estate stated to the circuit court
that he had investigated the claim and his wish was that
it be allowed. The court allowed the demand with in-
terest on the pricipal from October 3, 1882, to November
25, 1904—a total allowance of $2,328. The proceeding
was certified back to the probate court where the allow-
ance was spread on the record and classified. After this
was done respondent in February, 1905, and within four
months after the demand was allowed, appeared in the
probate court and filed a motion to set aside and vacate
the allowance against the estate of his brother, setting
out the facts we have recited and alleging a conspiracy
between appellant, Nancy Keele, mother of said Isaac,
and S. T. Weeks, administrator of the estate, to prevent
Mrs. Keele's claim from being contested and have it
allowed. The motion further alleged that the supposed
note was barred by the Statute of Limitations, if in fact
it was a note, but that it was executed by the deceased as
his will. The motion further alleged that it would be
unjust to permit the demand to stand against the estate
on account of laches of appellant, and because she had
improperly converted to her own use assets of her de-
ceased son much more than the value of the demand. The
attorney who had represented respondent was elected
judge of the probate court before this motion to vacate
the allowance was filed and was disqualified to sit in the
proceeding; wherefore it was certified from the probate
court to the circuit court. The judge of the latter court
had been connected with the controversy and was like-
wise disqualified; so a special judge was chosen to sit in
the cause. The motion to vacate was heard May 12, 1905.
In behalf of the mover, Isaac T. Keele, Hon. James F.
Ball, now judge of the Montgomery Probate Court, testi-
fied as follows:

"I am judge of the probate court of Montgomery
county. I was employed by Isaac Keele to rep-
resent him in the estate of his brother John

Keele, deceased; Isaac is a son of Nancy M. Keele, and John was also her son; Nancy Keele's husband was Richard Keele; he died about a year and a half ago; John Keele died December 24, 1882. I was present when this case was presented to Judge. Johnson, as circuit judge, who was sitting in the case as probate court judge. I offered in behalf of Isaac Keele to enter his appearance and test the allowance of this note. Mr. Weeks, the administrator, told me he would not permit me to appear as attorney for him representing the interest of the John Keele estate, because he wanted the claim allowed; Mr. Cook and Mr. Hughes represented Mrs. Keele. I did not represent Mr. Weeks. We came into court in front of this bar; I asked the court to permit Isaac Keele to be heard as defendant. The attorneys for Mrs. Keele objected. The court ruled we were not entitled to be in court in that proceeding; Sam Weeks came up there and Judge Johnson asked him whether he wanted this claim allowed and he said he did. There was no testimony introduced of any character as to his claim, pro or con. Mr. Weeks representing the defendant and Mr. Hughes and Mr. Cook representing Mrs. Keele, were heard. We had nothing to say; were permitted to say nothing because there was no party defendant except Mr. Weeks and no way to act in the defense under the ruling of the court except to allow and certify back and vacate as in that section provided. Mr. Cook and Mr. Hughes objected continuously to us stating we appeared for the defense. Mr. Weeks did not appear by any attorney."

On cross-examination he testified as follows:

"Mr. Weeks did not appear in court and say he had investigated the matter; he told me that in a private conversation. When Mr. Weeks told the court I did not represent him, I walked out of hearing of the court and said some things in my own language; I think I used some words that I shouldn't like to quote in this connec-

tion. Personally I have the highest regard for Mr. Weeks, but I thought that he used very poor judgment in procuring the allowance of this claim. I think when Mr. Weeks informed the court I did not represent him, I cussed all three of you, at least to Mr. Rosenberger. I have no prejudice against Mr. Weeks; I think whoever advised him advised him very badly. I think Sam T. Weeks is as good a man as there is in the State of Missouri."

This was about all the evidence introduced in support of the motion to vacate. In opposition to the motion appellant introduced in evidence the note or demand against the estate and the agreement to transfer the demand from the probate court to the circuit court to be heard in the latter court.

S. P. Sailor testified that he knew John Keele in his lifetime; that shortly before his death deceased asked the witness to write an instrument for him (deceased) saying that he wanted his mother to get what property he had because she had done more for him than any one else. Sailor went to the home of the father of the deceased and wrote the note or document in controversy, which was attested by J. P. Bailey and Rufus W. Hunley, after John Keele had signed it; that the latter raised up in bed and signed it, his mind being in good condition then.

J. P. Bailey testified that he was present when John Keele died and prior to his death signed the paper as witness to Keele's signature; that "it seemed to be his will or wishes; I do not know what you lawyers could call it; what he had and where he wanted it to go; he wanted the property to go to his dear mother. This paper was read to me before I signed it, I believe John read it himself." The witness testified on cross-examination that it was the wish of the deceased that his mother should have what he possessed. Keele died of consumption and was sick a long time. The witness said he did

not understand the document as a note, but that the deceased gave it to his mother for her kindness to him during his illness.

The judgment of the circuit court entered November 25, 1904, allowing the demand against the estate of the deceased, was introduced in evidence.

W. B. Cook, one of the attorneys for appellant, testified that when the demand was originally heard by the circuit court he objected to an attorney appearing for Isaac Keele for the reason that the case was against the administrator; that the administrator consented to the hearing of the case and stated to the court that he had investigated the merits of the claim and had no defense to offer.

W. C. Hughes, another attorney for appellant, testified substantially to the same effect. He swore that Weeks, the administrator of the estate, at the hearing of the demand, said he had employed no counsel to contest it, because he had talked with the two attesting witnesses and others who knew the facts, and after an investigation of the claim believed it to be just and that no defense could be made to it.

S. T. Weeks, the administrator, testified that when the claim was originally presented to the probate court, he requested Judge Barnett to delay transferring it to the circuit court in order that its merits might be investigated; that he, the administrator, talked with at least four witnesses and when the cause came on for hearing in the circuit court, stated to the court that he had investigated it and had no defense to make and was willing for the appellant to take judgment by consent.

Hon. J. D. Barnett swore as follows:

"Until January 1st I was probate judge of Montgomery county; this note was filed for allowance shortly after the appointment of administrator. I was disqualified to try the case, and the agreement was made between the parties to certify it to the circuit court;

that agreement was shortly before the term of circuit court began; Mr. Weeks asked the court that the case be not transferred at that time, as he was not ready to try the case and knew nothing about the facts, and wanted the matter delayed in order that he might thoroughly investigate all the facts and then take such action as he thought advisable; the matter continued in that shape for about six months and was then transferred to the circuit court." Cross-examination: "Judge Weeks gave me to understand that if he thought it necessary to employ an attorney he would prefer one other than yourself (J. F. Ball). I do not know who he counseled with as attorney. I think it was you that suggested I was disqualified, and I accepted the suggestion and disqualified. I was present in circuit court when judgment was rendered, I suppose. I. T. Keele was represented by the administrator, as all the heirs were."

On this testimony the court entered the following finding of facts and judgment:

"This is a proceeding wherein said Isaac Keele is an objector to the allowance of said $...... and has filed his motion and affidavit under section 214, page 170, Revised Statutes 1899, to vacate the order of allowance and for a new trial of same.

"The case originated before Judge Barnett, probate judge; because he decided that he was disqualified from trying the controversy, he transferred it to the circuit court. Before this transfer said Isaac Keele, an heir, had through his attorney, informed the probate judge that he desired to contest the claim in the probate court.

"After the transfer, the case came on for trial before Hon. Houston Johnson, circuit judge. The said Isaac Keele, by his attorney, Judge J. F. Ball, here renewed his efforts to be heard in opposition to allowing said claim.

"The defendant administrator, Weeks, declined to allow said attorney Ball to appear as his attorney, and

the circuit court declined to allow said attorney J. F. Ball to appear and defend for said Isaac Keele. The administrator informed the court that he had fully investigated the claim, believed it was just and consented to its allowance.

"Thereupon the circuit court allowed the claim in full and certified it back to the probate court to be allowed there and classified. When the claim was presented in the probate court the said Isaac Keele filed his motion and affidavit to have the said allowance set aside, and a new hearing granted under said section 214. The probate court and the judge of the same, Hon. J. F. Ball being disqualified to act in said case, it was again transferred to the circuit court for further proceedings.

"There is practically no conflict in the evidence, and the court finds that inasmuch as the claim is a large one, is very old, and that Isaac Keele is an interested party, and has filed his affidavit for a rehearing, and that no defense was made by the administrator, and that the said Keele has informed the court of the different defenses he proposes to maintain, the court holds that the administrator, while he is the legal owner of the personal property and may have the right to allow claims against the estate without interference, that this right stops just as soon as the allowance is made; and that as soon as it is made any person allowed by section 214 may, on a proper showing to the court, obtain a new trial.

"This right is not brought about by the principles of equity pleading. It is a plain statutory right, and it is a proceeding at law.

"The allowance in this case has never ripened into a final judgment; that must have occured before it could be held necessary to attack it by the machinery of the equity side of the court.

"This allowance is in the nature of an interlocu-

tory judgment and had to await objections for four months before it could become final. While no fraud has been shown against Mr. Weeks, it is shown that he declined to allow said Isaac Keele the heir and his attorney to aid in any way the defense; indeed to make any defense. However good may have been the intention of the administrator, this court finds that he was in error and made a mistake in virtually confessing judgment against the estate in his hands.

"Section 214 gives to Isaac Keele the right to ask for a new trial of said claim; it also gives him the right to appear as an intervening defendant in order that it may be known to any court that he is a party to the record, and for the protection of the estate, against whom judgment for costs may be had if he fails in the defense.

"This court orders and adjudges that said claim has been improperly allowed, and said order of allowance is therefore vacated and set aside.

"And it is further ordered and adjudged by this court that said claim shall be tried anew in this court, and that said Isaac Keele is made an intervening defendant, and is allowed to make such defense as may be proper."

The present appeal was taken from that judgment.

GOODE, J. (after stating the facts).—The point to be first considered is the effect on Isaac T. Keele's right to move in the probate court to vacate the allowance in favor of his mother, of what transpired in the circuit court when he asked permission to contest the demand. The testimony contained in the present record shows Keele made that request, but does not show definitely the form of the request and its refusal; that is, whether an application was filed and an order denying it entered of record, or whether, on the court's indicating orally that his opinion was adverse to Keele's request to be heard, the matter was pressed no further.

The findings of fact contained in the judgment entered on the present motion, state that the administrator declined to allow Keele's attorney to act as attorney for the administrator at the hearing of the demand and that "the circuit court declined to allow said attorney, J. F. Ball, to appear and defend for said Isaac Keele." Judge Ball stated in his testimony that "the court ruled they were not entitled to be in court in that proceeding." Though no entry of record is before us showing a formal application by Keele to be made a party to the proceeding, or an adverse ruling on his application, it is certain that he appeared and asked the right to be heard and that the court denied his application in such a way that, whether what occurred was entered of record or not, a bill of exceptions to preserve the proceedings might have been taken and filed. This being true, was it incumbent on Keele to appeal from the order of the circuit court in that proceeding, bringing up by the appeal the denial of his application? The motion to vacate was founded on the following section of the administration statutes.

"If any executor, administrator, heir or creditor of an estate shall, within four months after any demand shall have been allowed, file in the office of the probate court the affidavit of himself or some credible person, stating that the affiant has good reason to believe, and does believe that such demand has been improperly allowed, and shall furnish satisfactory evidence of that fact to the court, and further, that notice has been given the opposite party or parties in interest, the court shall vacate such order of allowance and try the matter anew, and allow or reject such demand, as shall be right; and if, upon such new hearing, such demand shall be allowed, it shall be classed and paid as if such new hearing had not been granted." [R. S. 1899, sec. 214.]

The scope of that section has not been fully defined by adjudications; but in our judgment it was not in-

tended to allow a party interested in an estate who appears and contests the allowance of a demand, to move afterwards to vacate the allowance on the same ground on which he contested it. To take this view of the statute would annul, as far as the allowance of demands against the estates of deceased persons is concerned, the general doctrines governing the effect of former adjudications. An executor, administrator, heir, devisee, legatee, creditor, or other person having an interest in an estate may appeal from a judgment allowing against the estate a demand exceeding $10. [R. S. 1899, sec. 278.] If the demand is made after an actual contest by any party in interest, we think section 214 of the statutes does not contemplate that such party can have the matter reopened for another contest on the identical ground previously adjudicated. Now, though respondent would not have been concluded by the judgment allowing the demand if he had not appeared and asked to be heard, having done so, was he not bound to prosecute the matter still further or seek relief on appeal from the court's decision, instead of depending on vacating the allowance later under section 214? We are of the opinion that denying respondent's right to be heard on his application left him as fully entitled to invoke any other method of redress the law afforded, including the proceeding provided in section 214, as he would have been if he had not appeared at the hearing of the demand. A point quite similar was determined in Windsor v. McVeigh, 93 U. S. 274. The Congress of the United States had passed an act in aid of the suppression of the rebellion, which authorized the seizure and confiscation of the property of those in insurrection against the Government, and directing that proceedings under the act should follow the admiralty procedure. The property of Windsor was seized by a Federal marshal and an information filed in the name of the United States setting forth that

Windsor, since the passage of said act, had held an office under the government of the Confederate States and in various ways had given aid and comfort to the rebellion; that his property had been seized pursuant to the act and by reason of his conduct had been forfeited to the United States and should be condemned. On the filing of his bill the Federal district court ordered process of monition to issue and designated a day and place for the trial of the cause, with an order that notice be given by publication, warning all persons interested to appear at the trial to show cause why condemnation should not be decreed. Windsor appeared in response to the monition and filed a claim to the property and an answer to the libel. On motion of the district attorney, his claim, answer and appearance were stricken from the files of the court on the ground that the answer showed he resided in the city of Richmond, Virginia, within the Confederate lines, and was a rebel. The motion was granted and the court entered its decree condemning the property as forfeited to the United States. It was afterwards sold under this decree and purchased by defendant McVeigh, who took possession. In an action of ejectment instituted by Windsor, the question was whether the decree of condemnation, passed after refusing to allow Windsor to appear and defend the libel, was valid. It will be seen that Windsor did practically the same thing that Isaac Keele did; that is to say, appeared and asked to be allowed to defend in a proceeding affecting his interest. It will be seen, too, that his application was formal and the action of the court on it was a ruling entered of record. The Supreme Court of the United States held that the refusal to permit Windsor to defend, left his rights as much unaffected by the decree as they would have been had no notice of the proceeding been published. In passing on the proposition the court said:

"The question for determination is, whether the de-

cree of condemnation thus rendered, without allowing the owner of the property to appear in response to the monition, interpose his claim for the property, and answer the libel, was of any validity. In other words, the question is, whether the property of the plaintiff could be forfeited by the sentence of the court in a judicial proceeding to which he was not allowed to appear and make answer to the charges against him, upon the allegation of which the forfeiture was demanded.

"There were several libels of information filed against the property of the plaintiff at the same time with the one here mentioned. They were identical in their allegations, except as to the property seized, and the same motion to strike from the files the appearance, claim, and answer of the respondent was made in each case, and on the same day, and similar orders were entered and like decrees of condemnation. One of these was brought here, and is reported in the 11th of Wallace. In delivering the unanimous opinion of this court, upon reversing the decree in the case, and referring to the order striking out the claim and answer, Mr. Justice Swayne said: 'The order in effect denied the respondent a hearing. It is alleged he was in the position of an alien enemy, and could have no *locus standi* in that forum. If assailed there, he could defend there. The liability and right are inseparable. A different result would be a blot upon our jurisprudence and civilization. We cannot hesitate or doubt on the subject. It would be contrary to the first principles of the social compact and the right administration of justice.' [11 Wall. 267.]

"The principle stated in this terse language lies at the foundation of all well-ordered systems of jurisprudence. Wherever one is assailed in his person or property, there he may defend; for the liability and the right are inseparable. This is the principle of natural justice, recognized as such by the common intelligence

and conscience of all nations. A sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal.

"The law is, and always has been, that whenever notice or citation is required, the party cited has the right to appear and be heard; and when the latter is denied, the former is ineffectual for any purpose. The denial to a party in such a case of the right to appear, is in legal effect, the recall of the citation to him. The period within which the appearance must be made and the right to be heard exercised, is, of course, a matter of regulation, depending either upon positive law, or the rules or orders of the court, or the established practice in such cases. And if the appearance be not made, and the right to be heard be not exercised, within the period thus prescribed, the default of the party prosecuted, or possible claimant of the property, may, of course, be entered, and the allegations of the libel be taken as true for the purpose of the proceeding. But the denial of the right to appear and be heard at all is a different matter altogether. . . .

"In the proceedings before the District Court in the confiscation case, monition and notice, as already stated, were issued and published; but the appearance of the owner for which they called, having been refused, the subsequent sentence of confiscation of his property was as inoperative upon his rights as though no monition or notice had ever been issued. The legal effect of striking out his appearance was to recall the monition and notice as to him. His position with reference to subsequent proceedings was then not unlike that of a party to a personal action, after the service made upon him has been set aside. A service set aside is never service by which a judgment in the action can be upheld.

"The doctrine invoked by counsel, that, where a

Keele v. Keele.

court has once acquired jurisdiction, it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct as a general proposition, but, like all general propositions, is subject to many qualifications in its application. All courts, even the highest, are more or less limited in their jurisdiction: they are limited to particular classes of actions, such as civil or criminal: or to particular modes of administering relief, such as legal or equitable; or to transactions of a special character such as arise on navigable waters, or relate to the testamentary disposition of estates; or to the use of particular process in the enforcement of their judgments. [Norton v. Meador, Circuit Court of California.] Though the court may possess jurisdiction of a case, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things and cannot then transcend the power conferred by the law. . . .

"It was not within the power or the jurisdiction of the District Court to proceed with the case, so as to affect the rights of the owner after his appearance had been stricken out, and the benefit of the citation to him thus denied. For jurisdiction is the right to hear and determine; not to determine without hearing. And where, as in that case, no appearance was allowed, there could be no hearing or opportunity of being heard, and therefore could be no exercise of jurisdiction. By the act of the court, the respondent was excluded from its jurisdiction."

Respondent not having been concluded by the judgment of the circuit court, but standing as fully invested with the right of an heir to proceed against the allowance as if he had not appeared and asked leave to resist it, we have to determine next the extent of the right conferred on him as an heir by section 214 of the statutes.

The history of this section was traced in Martin v. La-Master, Admr. of Nichols, 63 Mo. App. 349, and it was pointed out in the opinion in that case that the relief provided by section 214 was originally given only to those parties interested in the estate who fell within the purview of the two preceding sections 212 and 213; but that in the current revision of the statutes, section 214 was so amended as no longer to refer exclusively to persons designated in the preceding sections, but instead to permit any of the designated persons to move within four months after the allowance of a demand for its vacation. The opinion said:

"The plain and obvious object the lawmaker had in view in so amending the statute was to afford the administrator, executor, heir, or creditor of an estate, having reason to believe that an improper allowance had been made against the estate, an opportunity to have the same, within four months thereafter, set aside and the matter tried anew, and this, too, whether notice of the presentation is given to the representative or his agent. And this statutory enlargement of the jurisdiction of the probate court does not, in any way, alter or affect the jurisdiction of the circuit courts exercising equitable jurisdiction."

A similar view of the statute was taken in Gaither v. Mason, 106 Mo. App. 354. We hold that Keele as an heir of his deceased brother, was entitled to move within four months after the allowance of the demand, for its vacation, unless the right did not exist because the allowance was ordered by the circuit court instead of the probate court; a question to which we shall advert presently.

But it is said that section 214 requires the party moving to vacate a demand, to furnish satisfactory evidence to the court that the demand was improperly allowed. We do not understand the statute to mean that the mover must give such proof against the allowance

as would be required to defeat it at a hearing on the merits; but only that such a probable showing must be made against its propriety as will convince the court that the matter ought to be reheard in order to be more sure of a correct result. The findings of fact contained in the judgment vacating the present allowance show the court was satisfied to that extent. There was no abuse of judicial discretion in the ruling to justify us in reversing it.

But it is strenuously insisted that as the demand was allowed originally in the circuit court and certified back to the probate court for classification, the latter court could not vacate the judgment of its superior court or entertain a motion for that purpose. The proceeding to establish the demand got into the circuit court by force of section 1760 of the statutes; which provides that when a judge of probate is interested in a cause or proceeding involving an estate, or has been of counsel, or a material witness, or is related to either party, he shall not sit if any party in interest shall object in writing verified by affidavit; but the proceeding shall be certified to the county court or circuit court for hearing and determination, and the clerk of the county or circuit court shall deliver to the probate court a complete transcript of the judgment or decree entered in the cause. It will be observed that a probate proceeding in which a probate judge is disqualified may be certified either to a county court or to a circuit court; and we conceive that when this is done the proceeding does not lose its probate character, but is governed by the administration law, except in matters of practice. We are not called on to determine that a judgment entered on a demand by the circuit court, in a case which had been certified to it, could be vacated by the probate court at the instance of an heir or creditor, for matters which had been in issue and formally tried and determined in the circuit court. Neither need we decide that if issues are joined over a demand in the pro-

bate court and on a full hearing and trial the demand is allowed, it can be set aside afterwards at the instance of a creditor or heir, for a rehearing of the same issues. Perhaps if the allowance was vacated in either of those two contingencies, the ruling might be held to be an abuse of judicial discretion. But it is obvious that appellant's demand was allowed by the circuit court without any contest, and under circumstances which constitute a case giving an interested party a clear right to invoke the remedy provided in section 214. The administrator of the estate of the deceased not only made no effort to prevent the allowance of appellant's demand, but consented to it. There was no hearing on the merits in the circuit court. This being the fact and Keele having been denied an opportunity to oppose the demand, we hold there was no error or abuse of discretion in ordering it set aside and a rehearing granted. The order to that effect will, therefore, be affirmed and the cause remanded. All concur.