In the Matter of the ESTATE of Edward SCHWIDDE, Deceased.

Robert W. SCHWIDDE, Administrator c.t.a.d.b.n. of the Estate of Edward Schwidde, deceased, Appellant,

v.

SCHOOL OF the OZARKS, Masonic Home of Missouri and Evangelical Deaconess Society of St. Louis, Missouri.

No. 49434.

Supreme Court of Missouri,

Division No. 1.

Jan. 14, 1963.

N. Murry Edwards, St. Louis, Ninian M. Edwards, Clayton, for heirs.

R. Forder Buckley, Fred J. Hoffmeister, St. Louis, for administrator.

Green, Hennings, Henry, Evans & Arnold and Robert D. Evans, St. Louis, for respondent School of the Ozarks.

Richard O. Rumer, St. Louis, for respondent Masonic Home of Missouri.

Ziercher, Tzinberg, Human & Michenfelder and Herbert W. Ziercher, Clayton, for respondent, Evangelical Deaconess Soc. of St. Louis, Mo.

HOUSER, Commissioner.

This is an appeal by Robert W. Schwidde, Administrator cum testamento annexo de bonis non of the Estate of Edward

Schwidde, Deceased, from the order, judgment and decree of the Circuit Court of the City of St. Louis removing him from office, etc.

■ The first question is whether this or the circuit court has jurisdiction. School of the Ozarks, Masonic Home of Missouri and Evangelical Deaconness Society of St. Louis, Missouri filed a petition in the probate court to remove the administrator, praying for revocation of letters and appointment of a substitute, and for an order on the newly appointed administrator to make distribution to petitioners. The administrator caused the probate judge to be disqualified and the matter was ordered certified to the Circuit Court of the City of St. Louis, under § 472.060, RSMo 1959, V.A.M.S. In circuit court the administrator and heirs filed a joint motion to dismiss. The petition and motion were assigned to Division No. 14, and there tried and determined by Circuit Judge Theodore McMillian, who entered his order, judgment and decree in that division of circuit court on February 5, 1962. The administrator desiring to appeal, but uncertain as to which course to take, filed two notices of appeal: an appeal to the Circuit Court of the City of St. Louis on the theory that Judge McMillian was sitting as a probate judge and that the judgment rendered was a probate court judgment; another appeal to the Supreme Court on the theory that the judgment rendered was a circuit court judgment. Section 472.060, supra, provides in part that "when the objections are made (to the probate judge sitting in the case), the cause shall be certified to the circuit court, which shall hear and determine same; and the clerk of the circuit court shall deliver to the probate court a full and complete transcript of the judgment, order or decree made in the cause, which shall be kept with the papers in said office pertaining to said cause." (Parentheses supplied.) The circuit court, on proper certification under § 472.060, supra, acquires jurisdiction *as a circuit court*. Although the proceeding retains its probate character, Hewitt v.

Duncan's Estate, 226 Mo.App. 254, 43 S.W. 2d 87; Keele v. Weeks, 118 Mo.App. 262, 94 S.W. 775, the judgment rendered on such certification is a judgment of the circuit court, not of the probate court, and the affidavit for appeal must be filed in the circuit court, and not in the probate court. The appeal must be taken to the supreme court or court of appeals, depending on the amount in controversy or other jurisdictional consideration, and not to the circuit court. Since the amount in controversy exceeds the sum of $15,000 the appeal was properly taken to this Court.

The facts are undisputed. Edward Schwidde died February 17, 1959 leaving two wills, one dated December 30, 1958, leaving his entire estate to Mr. and Mrs. W. C. Huttger; the other dated August 28, 1951, leaving the bulk of his estate to nine named charities. The earlier will was admitted to probate. An application for probate of the later will was denied. Certain heirs filed suit to contest the earlier will, and some of the charities intervened in that case. Other charities filed a separate suit to contest the earlier will and to have the rejected will adjudged to be decedent's last will and testament. While the will contests were pending the heirs and the nine charities entered into a written agreement which obligated the nine charities, if and when they should receive the assets of the estate as the result of the will of 1951 having been finally adjudicated to be the last will and testament of deceased, "and pursuant to the final Order of Distribution in accordance with the provisions of said will," to "pay over to [the heirs] and their attorney" the sum of 57% of the net value of the estate after deducting costs of administration, including court costs, executor's and attorney's fees, allowed claims and taxes, but not including estate or inheritance taxes. The agreement further provided that the settlement and payments therein provided for were contingent upon (1) the ability of the charities to uphold the will of 1951 and (2) the charities receiving the assets as beneficiaries of the will, "and that the

percentage of said estate is to be paid by said [charities] only at such time as said [charities] receive their bequests under said Will in accordance with the Orders and Judgments of the St. Louis Probate Court." The charities agreed that "upon receipt of the same, as hereinbefore provided they shall immediately and all at the same time pay over to N. Murry Edwards, attorney for the [heirs], the above described proportionate share of the assets of said estate for the benefit of said attorney and the [heirs] * * *." Trial of the will contests resulted in the upholding of the 1951 will. Thereafter the successor to the trust company named as executor in the 1951 will applied for letters testamentary and to be appointed executor. Objections to the appointment were filed. Litigation ensued. Later by written agreement of the interested parties (the heirs and their attorney, the charities and the trust company) the trust company withdrew its application and the parties consented to the naming of Robert W. Schwidde, one of the contesting heirs, as administrator c. t. a. d. b. n. of the estate, and the representation of the administrator by counsel selected by and acceptable to the nine charities. Mr. Schwidde was appointed and two highly reputable attorneys were selected by the nine charities to represent him. Thereafter Mr. Schwidde, administrator, found himself with $496,188.36 cash on hand. A partial distribution was deemed advisable. The question of the amount of the federal estate tax had not been determined. There were several different methods of determining the tax. Accountants employed to calculate the possible tax liability had reported that the greatest amount the heirs could receive, for their part, under the settlement agreement was $189,700 and the least amount was $155,700. With these figures in mind counsel for administrator determined they would ask for distribution of $297,000, which would leave a balance of more than $200,000 for taxes and expenses. The heirs would get $148,500 and the charities $148,500 under this plan. Counsel prepared a petition for partial distribution alleging that the administrator had in possession cash in the amount first above stated; that the time for filing claims had expired; that there were no outstanding claims and the only claims to be paid before final settlement would be for federal estate, inheritance and income taxes and administration costs; that pursuant to the will and under the terms of the settlement agreement theretofore executed distribution was to be made to the nine charities, each of which was entitled to an undivided ⅑ interest, and praying for an order of partial distribution of $297,000 to nine named charities in the sum of $33,000 each. Upon the filing of the petition for partial distribution a copy of the agreement settling the will contests was filed in probate court. Partial distribution in accordance with the petition was ordered on July 3, 1961. Distribution was then made as follows: acting on the advice and at the direction of his counsel Mr. Schwidde issued checks for $16,500 to each of the nine charities and issued nine checks for $16,500 payable to the attorney for the heirs, and sent each of the charities its check for $16,500 and a form for signature, acknowledging receipt of $33,000. The attorneys for the administrator conceived this to be a proper and expeditious method of effectuating the provision of the settlement agreement that upon receipt of their bequests the charities would "immediately and all at the same time pay over to" the attorney for the heirs their proportionate share of the assets of the estate. (The discrepancy between the 57% agreed upon and the 50% actually tendered was explained by one of the attorneys for administrator on the basis that "nobody [certainly not the heirs] could be prejudiced by doing it that way.") Six of the nine charities acquiesced in this arrangement, accepted the $16,500 checks and executed and returned to the administrator their separate receipts for $33,000. Three charities (School of the Ozarks, Masonic Home of Missouri, and Evangelical Deaconess Society of St. Louis, Missouri, these petitioners) refused to accept the $16,500 checks tendered, returned the checks and unsigned receipts, and filed in probate court a petition to re-

move the administrator and for an order of distribution, alleging refusal on the part of the administrator to make distribution to petitioners unless they would accept $16,500 and execute a receipt showing they had received $33,000; that the purpose of the unlawful demand was to require the charities to enable the administrator to pay the heirs' attorney $16,500 out of the distribution to each legatee, purporting to be payable under the settlement agreement, but that there was controversy between the attorney for the heirs and the legatees; that under the agreement the sums due the heirs were not payable by the administrator, nor yet payable by the charities until the assets of the estate were received by them pursuant to the *final* order of distribution; that by using his position as administrator, as aforesaid, the administrator had rendered himself unsuitable to execute the trust reposed in him and had failed to discharge his official duties, and was using his office as administrator for his own benefit. The prayer was for removal of Robert W. Schwidde as administrator, appointment of a new administrator, and that the probate court order the newly appointed administrator to make distribution in the full amounts provided in the order of partial distribution of July 3, 1961, with interest. At this juncture the matter was certified to the circuit court. In circuit court Mr. Schwidde, administrator, and the heirs, joined in the filing of a motion to dismiss the petition to remove the administrator and for an order of distribution. At the hearing on the petition to remove, one of the administrator's attorneys testified that it was agreed that it was the desire of all nine charities to terminate all litigation as soon as possible so the estate could be settled in an orderly fashion and the assets distributed in accordance with the settlement agreement between the heirs and the nine charities; that Mr. Schwidde had been appointed by agreement; that it was agreed that the nine charities would select attorneys to represent him; that he and his co-counsel advised Mr. Schwidde to distribute the money in this

manner; that they handled the matter as they did because they felt this represented and carried out the intention of the parties as expressed in the settlement agreement; that Mr. Schwidde never did anything against or in opposition to the advice of his attorneys, but followed their advice at all times; that none of the charities had objected or asked either of the attorneys to cease representing estate; that he and his co-counsel made the distribution "in accordance with the order of Probate Court," and that the order referred to the settlement and that the court took the settlement into consideration. On February 5, 1962 the circuit court dismissed the motion of the administrator and heirs to dismiss petitioners' application; sustained petitioners' application for an order of distribution and further ordered that the amount allowed by the probate court as partial distribution be paid in full to the legatees designated by the court, free of any claims or deductions for the heirs or their attorney; dismissed the application to remove Mr. Schwidde as administrator, but on the court's own motion removed Mr. Schwidde as administrator "for the reason that his interest as Administrator and as an heir at law of the deceased Edward Schwidde are irreconcilable in interest so as to make him incapable and unsuited to execute the trust reposed in him so as to impartially be able to perform his official duties." The court further ordered Mr. Schwidde to make an accounting, and turn over all remaining assets to the person designated in the order as the new administrator. Post-trial motions having been overruled, the administrator duly appealed.

Appellant contends that the court erred in removing him as administrator because (1) the finding that his interest as an heir was irreconcilable with his interest as administrator was erroneous; (2) the evidence failed to show that he was in anywise incapable or unsuitable to execute or that he violated the trust reposed in him, but showed that at all times he acted in good faith on advice of counsel, who in turn acted

properly under the terms of the settlement agreement and order of partial distribution in advising and directing him to make partial distribution as attempted. Respondents claim that Mr. Schwidde proved himself unsuitable to execute the trust reposed in him, failed to discharge his official duties, wasted and mismanaged the estate, and was properly removed. They see a conflict of interest between Mr. Schwidde and the beneficiaries of the estate for whom he acts as trustee, arising out of the fact that he is an heir (but not a beneficiary under the will) and a party to the settlement agreement, as to the terms of which a dispute has arisen.

Section 473.140, RSMo 1959, V.A.M.S., provides in part: "If any * * * administrator becomes * * * in anywise incapable or unsuitable to execute the trust reposed in him, or fails to discharge his official duties, or wastes or mismanages the estate, * * * the court, upon its own motion, or upon complaint * * * by any person interested supported by affidavit, after notice to the * * * administrator, * * * shall hear the matter and may revoke the letters granted."

We conclude that while the action of the administrator was improper, it did not render him unsuitable to execute the trust or justify removal from office under § 473.140. His action was improper because he did not comply with a clear and unambiguous order requiring him to pay petitioners $33,000 each. The fact that petitioners may have been obligated by contract to pay a part of the bequest to the heirs and their attorney did not alter the administrator's duty under the order. Neither the probate court, State ex rel. Jones v. Jones, 131 Mo. 194, 33 S.W. 23, 26, nor an administrator, has "power to pass upon the rights or claims of third persons against legatees * * * of estates in the course of administration, or * * * power to substitute contending parties in the place of the legatees * * *." Neither the probate court, In re Gillis' Estate, Mo.App., 33 S.W.2d 973, nor an administrator, is concerned with the rights or claims of creditors against legatees, and it is the duty of the probate court to order distribution of the assets to the legatees entitled thereto, In re Gillis' Estate, supra, and the duty of the administrator to distribute to those so entitled, "regardless of the claims of their creditors." We disapprove of the action of the administrator in assuming to act as judge and jury by withholding $16,500 from three legatees entitled to $33,000, in this effort to insure that he and other heirs and their attorney recovered their share of the legacy under the collateral contract. Requiring a receipt for $33,000 while tendering a check for $16,500 is insupportable. But the impropriety related merely to the mode of payment—the proper method of carrying out the court order. There is no evidence of bad faith, fraud, dishonesty, or an attempt to deprive petitioners of property lawfully theirs or to convert the property to the use of the administrator. On the contrary, the record convinces us that the administrator, acting upon the advice and at the direction of highly regarded counsel, misconceived his duties under the court order because of a misinterpretation of the terms and force and effect of the settlement agreement. He and they considered that the settlement agreement, which was filed in court and presumably was before the probate judge when the order of partial distribution was made, was an implied provision of the court order; honestly believed that under the settlement agreement and order he was authorized to pay the $16,500 direct to the heirs and their attorney, and in good faith considered that he was complying with, not violating, the order. Thus a bona fide dispute arose as to the proper method of carrying out the order, in view of the terms of the settlement agreement. We find no "irreconcilable conflict of interest" rendering Mr. Schwidde unsuitable to continue to execute the trust. We are unable to approve the harsh and punitive action of removal from office under § 473.140 on the basis of a bona fide dispute as to method and procedure, when the estate and the charities have

**590**

suffered no loss; the assets are fully protected by a solvent bond in the sum of $525,000; the administration of the estate is near an end; the administrator is fully capable of finally settling the estate; there is no antagonistic conflict of interest between the administrator and the heirs or their attorney, in a case where removal will serve no useful purpose but merely add to expense and delay in reaching a final settlement. Groves v. Aegerter, 226 Mo.App. 128, 42 S.W.2d 974, 979 [10], 980 [11], while different on the facts, is instructive on this question.

These considerations make it unnecessary to consider appellant's further points that the petition to remove appellant did not allege sufficient facts, and was defective in form.

Appellant contends that the circuit court erred in ordering that the amounts allowed by the probate court on July 3, 1961 as a partial distribution be paid to petitioners in full, "there being no provision in the statutes for an order of distribution on an order of distribution." The plain import and intent of the order appealed from was a direction to the newly appointed, *incoming* administrator to execute the original order of partial distribution, for it was based upon a petition which prayed "[t]hat the Court order the administrator, c. t. a., *whoever he may be* to make distribution to petitioners, residuary legatees, in the full amounts provided in the order of distribution of July 3, 1961, * * *." (Italics ours.) The effect of our ruling is to set aside the appointment of the new administrator. This renders the order of distribution of February 5, 1962 *functus officio,* for it was directed at the newly appointed, incoming administrator. This leaves the original order of partial distribution in full force and effect, requiring the administrator to pay $33,000 to each of the petitioners.

Accordingly, the order and judgment of the circuit court dated February 5, 1962 is reversed and the cause remanded with directions to the circuit court to set the same aside and enter a new order and judgment, effective as of February 5, 1962, (1) sustaining the administrator's and heirs' joint motion to dismiss the petition to remove Robert W. Schwidde, administrator c. t. a. d. b. n. and for an order of distribution, and ordering that said petition be dismissed; (2) directing the administrator forthwith to pay petitioners the full amount to which they are entitled under the order of July 3, 1961; and (3) ordering the administrator to proceed with the administration of the estate. It is further ordered that the clerk of the circuit court deliver to the probate court a full and complete transcript of the judgment, order and decree made in this cause, pursuant to the requirement of § 472.060, supra.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.