Billy COOK, Respondent,

Terra Cook, Respondent Pro Se,

v.

Robert C. BARNARD, Personal Representative in the Estate of William Charles Barnard, Deceased, Appellant.

No. WD 61122.

Missouri Court of Appeals,
Western District.

April 8, 2003.

Paul Francis Devine, Maryland Heights, MO, for Appellant.

Timothy C. Brady, Co–Counsel, Fulton, MO, Robert V. Krueger, Jr., Mexico, MO, for Respondent.

Before ULRICH, P.J., LOWENSTEIN and HOLLIGER, JJ.

HAROLD L. LOWENSTEIN, Judge.

Robert C. Barnard appeals his removal by the Probate Court of Callaway County, under Section 473.140, RSMo 2000, (all further statutory references are to RSMo 2000), as personal representative of his deceased brother's estate. The personal representative's removal was sought by the respondents, based on an auto accident involving the deceased in which one of the respondents received serious injuries and whose potential special damages would exceed the assets in the probate estate. Removal was predicated upon the appellant's failure to respond to their demand, as creditors, to inventory non-probate assets (joint and payable on death, bank accounts, and joint tenancy on a farm) owned by the deceased and the personal representative at the date of death. § 461.300 (The applicable portions of which are contained in the appendix to this opinion.) Appeal of the probate court's order is available under Section 472.160.1(9).[1] Finding none of the grounds contained in Section 473.140 upon which to justify removal, this court reverses the judgment.[2]

---

1. The question of finality surfaces since there was no specifically denominated "judgment" revoking the letters and removing the appellant as personal representative. The right of appeal from the probate court's judgment is purely statutory, and under the probate code certain orders are recognized as final for appeal. Section 472.160.1(9), as applicable to this appeal, states in pertinent part, that an interested person aggrieved by an order or decree may appeal "all orders revoking letters ... of administration." The statute here controls since: "The finality of a probate court order is not solely determined by whether it is labeled a judgment." *In re Estate of Clark,* 83 S.W.3d 699, 701–02 (Mo.App.2002).

2. 473.140. Removal of personal representative

## I. Facts

The facts here were not contested. William C. Barnard ("William") and Billy Cook were involved in a traffic accident that resulted in William's death in January 2001. Billy Cook, who suffered brain injury during the accident and his wife, Terra Cook, petitioned the probate division of the circuit court to order administration of William's estate and filed a personal injury action against the estate, in February 2001, seeking an amount of damages which would exceed the inventoried value of the estate.

Upon William's death, his brother Robert Barnard ("Robert or appellant") became the recipient of certificates of deposit ("CDs"), which were in Barnard's name with a payable-on-death designation in favor of Robert or in the joint names of William and Robert; and of real property the two held as joint tenants with rights of survivorship. The second amended inventory of William's estate estimated a net value at an amount less than the damages sought by the Cooks. Robert did not include the value of the bank account, CDs, and realty.

By letter, the Cooks demanded that Robert include these items in the inventory, citing Section 461.300, which, among other things, allows probate capture of non-probate assets to satisfy claims that probate assets cannot satisfy. Robert did not inventory the items. The Cooks then filed this petition for his removal under section 473.140. The Cooks argued (1) that Robert failed to list the non-probate

assets in the inventory of estate assets though required to do so by Section 461.300; (2) that there was a "real and substantial controversy" whether the estate owned the unlisted items and that Robert's claim that he owned them was antagonistic to the interests of the estate; and (3) that, assuming Robert owned them, there was a conflict of interest because as administrator Robert would have an obligation to the estate's creditors to recover of the value of some (maybe all) of the unlisted items but as owner of these items he would want to retain their value.

Robert's answer to the Cook's petition for removal was ambiguous. In paragraph eight, Robert admitted paragraph seven of the Cook's petition, which claimed that "there exists a real and substantial controversy as to whether the [CDs] are assets subject to administration of the estate." But, in the same paragraph, Robert denied any obligation to inventory the CDs and, in paragraph six, he denied a duty to inventory the realty.

At the "short" hearing on the petition, the Cooks, who had the burden of proof to make a *prima facia* case under their Section 473.140 petition for removal, presented only documentary evidence of the factual claims underlying their reasons for removal of Robert. Appendix 2 to this opinion lists the six CD's and their ownership as well as title to the real estate. In addition, the appendix contains a chronology of the factual events is recounted. Robert did not present evidence. The trial court granted the Cooks' petition with-

If any personal representative becomes mentally incapacitated or is convicted of a felony or other infamous crime, or becomes an habitual drunkard, or in any manner incapable or unsuitable to execute the trust reposed in him, or fails to discharge his official duties, or wastes or mismanages the estate, or acts so as to endanger any corepresentative, or fails to answer any citation and

attachment to make settlement, the court, upon its own motion, or upon complaint in writing made by any person interested supported by affidavit, after notice to the personal representative, and to the attorney of record, if any, of any personal representative who cannot be served with notice in this state, shall hear the matter and may revoke the letters granted.

out providing any explanation of its decision.

## II. Standard of Review

 The judgment of trial court sitting as fact-finder is normally affirmed unless it is not supported by substantial evidence, against the weight of the evidence, or misconstrues or misapplies the law. *Murphy v. Carron* 536 S.W.2d 30, 32 (Mo. banc 1976).

## III. Analysis

The sole issue·here is whether as a matter of law the language for removal under Section 473.140, "incapable or unsuitable to execute the trust reposed in him" is satisfied when the personal representative declines to include jointly held non-probate assets in the inventory in order to satisfy tort claims. There are eight listed grounds for removing a personal representative:

> If any personal representative becomes mentally incapacitated or is convicted of a felony or other infamous crime, or becomes an habitual drunkard, or in any manner incapable or unsuitable to execute the trust reposed in him, or fails to discharge his official duties, or wastes or mismanages the estate, or acts so as to endanger any corepresentative, or fails to answer any citation and attachment to make settlement, the court, upon its own motion, or upon complaint made by any [interested person] ... may revoke the letters granted.

§ 473.140. These grounds are exclusive, *Tuchschmidt v. Tuchschmidt*, 861 S.W.2d 741, 744 (Mo.App.1993), and apply to court-appointed administrators, like Robert, as well as personal representatives. § 472.010(26).

 The Cooks' first argument is that Robert's decision to exclude the realty and CDs from the inventory of estate assets made him "incapable or unsuitable" to be personal representative because, supposedly, under Section 461.300(1) [3] Robert had an obligation to include these assets in the inventory of estate assets. Whether Section 461.300(1) required Robert to include the non-probate assets is a question of statutory interpretation, a question of law reviewed *de novo*. *Ochoa v. Ochoa*, 71 S.W.3d 593, 595 (Mo. banc 2002). Section 461.300(1) does not require the personal representative to inventory non-probate assets. It is a rule of liability, not of ownership. It allows the estate to recover the *value* of non-probate assets, among other things, when the estate's assets (the probate assets) are inadequate to cover its debts here, potentially, the Cooks' tort suit. Section 461.300 does not compel Robert to inventory these items which, by the Cook's own petition and argument, are non-probate assets. Because a personal representative or administrator cannot be removed for failing to do something she (or he) has no obligation to do, *In re Estate of Vester*, 4 S.W.3d 575, 578 (Mo. App.1999), Robert's decision not to inventory the non-probate assets was not a grounds for removal.

The inventory statute only covers the decedent's property held at his death, § 473.233(1). None of the items the Cooks claim should have been inventoried were

---

**3.** "Each beneficiary who receives non-probate transfer of a decedent's property under Section 461.003 to Section 461.081 and each person who receives other property by transfer other than from the administration of the decedent's probate estate that was subject to satisfaction of the decedent's debts immedi-· ately prior to the decedent's death ... shall be liable to account to the decedent's personal representative for a pro rata share of the value of such property received, to the extent necessary to discharge ... claims, remaining unpaid after application of the decedent's estate...."

decedent's at his death. Non-probate transfers—of the bank account and CDs that passed to Robert—are not testamentary; nor do they pass by descent. *See* § 461.009 & § 461.005(7). *See also In re Hoffmann*, 23 S.W.3d 646, 648–49 (Mo. App.2000). They passed to Robert by operation of law. The realty (held as joint tenants with rights of survivorship), though technically not non-probate assets, § 461.005(7), was not decedent's property at his death; at his death, his interest was extinguished, leaving Robert with the fee simple absolute. *Rushing v. S. Mo. Bank*, 859 S.W.2d 211, 221 (Mo.App.1993). Inventorying these assets might have been an error *justifying* Robert's removal. *See Tuchschmidt*, 861 S.W.2d at 743–44.

■ The second argument, that there is a *bona fide* dispute about the ownership of the CDs, which creates a conflict of interest, is based on a false premise, that there is an ownership dispute. There is not: Robert owns the unlisted items. *Davis v. Roberts* does not help the Cooks. 206 Mo.App. 125, 226 S.W. 662 (1920). In *Davis,* an executor was removed under the forerunner of Section 473.140 for failing to inventory a note the executor claimed ownership of. *Id.* at 663. This court affirmed, opining that:

> In a proceeding of this kind, it was not necessary to show that the estate was the owner of the property, but only to show, as the court found, that there was a real and substantial controversy as to the ownership of the note and that there was reasonable and probable cause to believe that the note belonged to the estate. A finding of this kind shows that the position of the executor and the estate is entirely antagonistic and that he ought not to be permitted to serve longer.

*Id.* at 664.

There is no reasonable dispute as to ownership. Nothing in the record indicates that the CDs, bank account, and realty were owned by the decedent at his death, nor any conduct indicating they were transferred to Robert because of fraud. By describing them as non-probate assets, the Cooks infer that the *estate* has no ownership interest in them. In Vol. 4A Missouri Practice, Probate and Surrogate Law Manual (2001), at page 623, the author, Judge Borron, in discussing the predecessor to Section 461.300, notes that this statute's purpose is to protect not only surviving family as well as to prevent transfers in fraud of creditors. There is nothing here to suggest the bank transactions from William or the real estate deed to William and Robert were inspired by any wrongdoing. As noted from the dates listed in the appendix to this opinion, all predated the accident by more than a year.

Granted, Robert appears to have made a judicial admission that there was a *bona fide* dispute in his answer to the Cook's petition. *See J.H. Berra Paving Co. v. City of Eureka*, 50 S.W.3d 358, 362 (Mo. App.2001) (answers to petition are judicial admissions). However, context indicates that there was no such admission. In paragraph six and seven of his answer, Robert explicitly disclaims any obligation to include the property in the inventory. Throughout the dispute, Robert refused to inventory the items. Interpreting Robert's answer liberally, as we are required to do, *Armstrong v. Cape Girardeau Physician's Assoc.*, 49 S.W.3d 821, 824 (Mo. App.2001), this court finds no admission of a *bona fide* dispute over ownership of the unlisted items. In any event, this matter is best left to discussion in the matter of the Cook's petition for accounting.

The Cooks assert Robert's ownership of the non-probate assets presented a conflict of interest because as personal representative Robert might have to seek recovery of

the value of some (or maybe all) of the non-probate assets in his possession.

Should the Cooks appear to be eligible to receive damages exceeding the value of the estate, the personal representative would have no obligation to file an accounting on their behalf to recover, under Section 461.300, the value of the assets he received. *In re Hoffmann,* 23 S.W.3d at 650. The Cooks themselves may, as they have done in filing for an accounting, seek recovery of the damages in excess of the estate's value. *See* § 461.300(2). Consequently, the conflict of interest could not materialize in harm to the Cooks.

While Robert, as a personal representative, had a general fiduciary duty to the beneficiaries of and all those interested in the estate, *Estate of Veselich v. Northwestern Nat'l. Cas. Co.,* 760 S.W.2d 564, 569 (Mo.App.1988), his failure to sue for recovery of the value—not being an obligation of the personal representative or administrator—did not warrant his removal. There are several reasons why.

■ First, if an administrator's interest in maximizing her (or his) distribution of estate assets was sufficient to allow a judge to remove an administrator, then Section 473.110.2(1) would make little sense, for it mandates appointment of a surviving spouse as administrator of the estate. Requiring the probate court to appoint the spouse selected by the decedent to be personal representative, *see* § 473.110, but then allowing removal solely because of joint transfers from the deceased spouse would make no sense. Second, as noted before, an administrator cannot be removed for failing to do something the administrator has no obligation to do, even if it might benefit the estate. *Vester,* 4 S.W.3d at 578–79. Third, as appellant points out, the caselaw has occasionally concentrated on the administrator's motive in reviewing the propriety of removal.

*See, e.g., In re Estate of Schwidde,* 363 S.W.2d 585, 589–90 (Mo.1963). But where the personal representative (or administrator) acts in good faith and the personal representative's actions, though wrongful, do not harm the estate, removal is not proper. *In re Estate of Schwidde,* 363 S.W.2d at 589–90 (improper to remove personal representative where actions were innocent and no damage to estate resulted). However, there is no evidence in this record that Robert acted in bad faith, nor that he has done anything inappropriate in procuring the interests or failing to offer them up.

It is important to note the issue in this appeal was removal of the personal representative under one of the grounds enumerated in Section 473.140, though implicating Section 461.300 does not require this court to decide the merits of respondents' contentions as to the vulnerability of the CD's or real estate to be included in the probate inventory of assets. The decision on whether all of part of the particular assets held jointly or payable on death will or can be made at a later time. All that was before the trial court in this case was the question of Robert's conduct in not including these matters in the inventory— whether his failure to deliver up all the non-probate assets jointly held under these facts created a conflict that rendered him incapable or unsuitable to execute the trust reposed in him. As such, this case and this opinion, do not reach these issues: (1) Are the Cooks indeed "creditors" within the meaning of Section 461.300? No Missouri case, including *Hoffman,* has defined creditor to specifically include potential damages due to the negligent acts of the decedent tort-feasor. 4A Mo. Practice, *supra* 2002 pocket part p. 24; (2) Were any or all of the previously described CDs and land susceptible to being subject to satisfaction of William's creditors immedi-

ately prior to his death? (3) Even if later it is judicially determined that the items here should be included for the benefit of creditors, does this render Robert subject to removal, or could a less drastic means be implemented, namely utilization of an administrator ad litem for this particular determination? *See* 4A Mo. Practice, *supra*, p. 622.

All the court decides today is: Was there insufficient evidence under any of the grounds enumerated in Section 473.140 to remove Robert as personal administrator of his brother's estate? The judgment removing him is reversed. On remand, the probate court is left to take up the matter of the accounting and the administration of the estate. If at some future time in the administration this personal representative runs afoul of the enumerated grounds for removal, then appropriate action under Section 471.140 may be commenced.

The judgment revoking appellant's letters and appointing the Public Administrator of Callaway County is reversed, and the cause is remanded.

All concur.

## APPENDIX 1

461.300. Nonprobate transfer—liability for pro rata share

1. Each beneficiary who receives a nonprobate transfer of a decedent's property under sections 461.003 to 461.081 and each person who receives other property by a transfer other than from the administration of the decedent's probate estate that was subject to satisfaction of the decedent's debts immediately prior to the decedent's death, but only to the extent of the decedent's contribution to the value of such other property, shall be liable to account to the decedent's personal representative for a *pro rata* share of the value of all such property received, to the extent necessary to discharge the statutory allowances to the surviving spouse and unmarried minor children, and claims, remaining unpaid after application of the decedent's estate, including expenses of administration and costs as provided in subsection 3 of this section, and including estate or inheritance or other transfer taxes imposed by reason of the decedent's death only where payment of those taxes is a prerequisite to satisfying unpaid claims which have a lower level of priority. No proceeding may be brought under this section when the deficiency described in this subsection is solely attributable to costs and expenses of administration.

2. The obligation of a beneficiary of a nonprobate transfer or other recipient of property under subsection 1 of this section may be enforced by an action for accounting commenced within eighteen months following the decedent's death by the decedent's personal representative, a creditor of the decedent's estate, the decedent's surviving spouse or one acting for an unmarried minor child of the decedent, but no action for accounting under this section shall be commenced by any person unless the personal representative has received a written demand therefor by a creditor, surviving spouse or one acting for an unmarried minor child of the decedent. Sums recovered in an action for accounting under this section shall be administered by the personal representative as part of the decedent's estate except as provided in subsection 3 of this section.

3. 64083 The judgment in a proceeding authorized by this section shall take

into account the expenses of administration of the estate including the cost of administering the additional assets obtained in the proceeding, and the costs of the proceeding to the extent authorized by this subsection. If the proceeding is commenced by a person other than the personal representative, the court may order the costs of the proceeding, other than attorney fees, to be charged against the amounts recovered and recoverable as a result of the proceeding. If the proceeding is commenced by the personal representative, the court may order the costs of the proceedings, including attorney fees, to be treated as expenses of administration of the estate.

4. After an action for accounting has been commenced under this section, any party to the proceeding may join and bring into the action for accounting other persons who are liable to account to the decedent's personal representative under subsection 1 of this section.

5. This section shall not affect the right of any transferring entity, as defined in section 461.005, to execute a direction of the decedent to make a payment or to make a nonprobate transfer or other transfer described in subsection 1 of this section on death of the decedent, or make the transferring entity liable to the decedent's estate, unless before the payment or transfer is made the transferring entity has been served with process in a proceeding brought under this section and the transferring entity has had a reasonable time to act on it.

6. This section does not create a lien on any property that is the subject of a nonprobate transfer or other property not subject to probate administration, except as a lien may be perfected by way of attachment, garnishment or judgment in an accounting proceeding authorized by this section.

7. An action for accounting under this section may be filed in the probate division of the circuit court, and the probate division of the circuit court may hear and determine questions and issues appropriate orders in an action for accounting under this section.

8. The recipient of any property held in trust that was subject to the satisfaction of the decedent's debts immediately prior to the decedent's death, and the recipient of any property held in joint tenancy with right of survivorship that was subject to the satisfaction of the decedent's debts immediately prior to the decedent's death, are subject to this section, but only to the extent of the decedent's contribution to the value of the property.

## APPENDIX 2

**Bank Assets**

| Date | Type | Amount | Ownership |
|------|------|--------|-----------|
| 08–08–96 | Saving Certificate | $ 34,861 | William or Robert |
| 03–28–97 | Saving Certificate | $ 12,943.62 | William or Robert |
| 10–28–98 | Saving Certificate | $ 5,555 | William payable on death to Robert |
| 02–02–99 | CD | $ 24,060 | William payable on death to Robert |
| 10–07–99 | CD | $ 23,812 | William or Robert |
| 12–20–99 | CD | $ 100,000 | William payable on death to Robert |

**Land**

| | |
|---|---|
| 10–27–88 | Warranty Deed from Grace Barnard to Grace, William and Robert as joint tenants of farm property in Callaway County. |

**Chronology of Events**

**2000**

| | |
|---|---|
| 11–20–0 | Accident |

**2001**

| | |
|---|---|
| 01–03–01 | William Barnard dies |
| 02–03–01 | Cooks file to require administration |
| 04–29–01 | Application for letters filed by appellant, Robert |
| 04–30–01 | Letters of administration as personal representative to Robert |
| 05–01–01 | Demand letter by respondents for damages |
| 05–14–01 | Claim in probate court filed by Cooks |
| 08–20–01 | Inventory filed without listing CD's on farm |
| 11–27–01 | By letter, Cooks demand an accounting |
| 12–11–01 | Cooks file this petition for removal |

**2002**

| | |
|---|---|
| 01–09–02 | Robert files his answer |
| 01–16–02 | (1) Cooks file petition for accounting. (2) Hearing held to remove Robert |
| 01–22–02 | Order removing Robert and appointing Public Administrator of Callaway County |
| 02–14–02 | Robert files motion to dismiss petition for accounting. |

